STATE OF NEBRASKA, APPELLEE, V. FRANCIS R. BOTTS, APPELLANT.
442 N.W.2d 384

Filed July 14, 1989.   No. 88-433.

Kurt R. McBride, of Hart & McBride, P.C., for appellant.

Robert M. Spire, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendant-appellant, Francis R. Botts, was convicted by a jury in the district court for Dawson County of incest in violation of Neb. Rev. Stat. § 28-703 (Reissue 1985). After a determination that defendant was not a mentally disordered sex offender, defendant was sentenced to 3 to 9 years' imprisonment. He timely appealed to this court, contending the evidence was insufficient to establish beyond a reasonable doubt the elements of the crime charged. We affirm.

The amended information filed March 14, 1988, alleged that defendant did "on or about the month of August, 1986, knowingly engage in sexual penetration with his granddaughter" in violation of § 28-703. That statute provides:

(1) Any person who shall knowingly . . . engage in sexual penetration with any person who falls within the degrees of consanguinity set forth in section 28-702 . . . commits incest.

. . . .

(3)(a) For purposes of this section, the definitions found in section 28-318 shall be used.

(b) The testimony of a victim shall be entitled to the same weight as the testimony of victims of other crimes under this code.

The degrees of consanguinity set forth in Neb. Rev. Stat. § 28-702 (Reissue 1985) include "grandparents and grandchildren of every degree." Finally, Neb. Rev. Stat. § 28-318(6) (Reissue 1985) provides that "[s]exual penetration shall mean . . . any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes."

The record shows that defendant is the grandfather of the victim, who was 5 years old at the time of trial. On April 24, 1987, the child's mother took her to the doctor for a kindergarten roundup physical examination. The mother testified that when the child was unable to produce a urine sample, the mother "did it for her." The doctor discovered the presence of sperm in the urine sample, said to have been

provided by the child. The doctor discussed the problem with the mother and then performed a "rape kit" on the child. The examination did not show any type of physical damage to the child.

The incident also was investigated by the Dawson County sheriff's office. During the sheriff's investigation, the mother told the deputy sheriff that the urine sample was hers, not the child's. A urine sample subsequently obtained from the child on the same day, after the mother told of her actions, was normal.

The child testified at trial that the incident with defendant occurred at night in defendant's bedroom in his house while her brothers were in the living room and her grandmother was at work. The child was wearing panties and one of defendant's shirts. She testified that while she was on defendant's bed, defendant slipped his hand through her panties, touching her vaginal area with his whole hand. She felt the touching inside her body. She told her mother about the incident, which happened "[a] long time ago."

The child's mother testified that in August 1986 her father, the defendant, was living in Lexington, Dawson County, Nebraska. Defendant had invited three of her children, including the victim, to stay the night at the house in Lexington because one of the children would be starting school. The mother testified that defendant picked the children up at about 3 p.m. on August 26, 1986. The mother was sure of the date because it was "two days before Josh was to start school." The victim did not stay overnight with the defendant on any other occasion during August 1986. The mother also testified that the victim complained to her of sexual abuse about 1 month before the April 24, 1987, kindergarten roundup physical examination.

During the investigation of this incident, defendant voluntarily waived his *Miranda* rights and agreed to speak with Stanley Rasmussen, an investigator for the Nebraska State Patrol. Rasmussen testified that defendant denied having any type of sexual contact with his granddaughter, but later stated that if he had done what he was accused of, he could not remember doing it. The record shows that defendant made similar statements to the Lexington police chief after waiving

his *Miranda* rights. Among these statements were, "If it's true, I just don't remember," and "If I did this, I must be sick."

Defendant testified that he was the grandfather of the victim.

We determine that the evidence, when taken in the view most favorable to the State, is sufficient to support defendant's conviction. We have often held that in reviewing a criminal conviction, it is not the province of the Supreme Court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Bowen, ante* p. 725, 442 N.W.2d 209 (1989); *State v. Wickline, ante* p. 329, 440 N.W.2d 249 (1989). Although there are conflicts in the evidence, the jury resolved those conflicts against the defendant.

The judgment of the district court is affirmed.

AFFIRMED.